# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| JAMES FORSLUND, | Civil No. 09-2134 (JRT/JJK) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| STRYKER CORPORATION, a Michigan corporation; and STRYKER SALES CORPORATION, a Michigan corporation, | |
| Defendants. | |

Paul M. Simmons and Colin P. King, **DEWSNUP KING & OLSEN**, 36 South State Street, Suite 2400, Salt Lake City, UT 84111-0024; and Yvonne M. Flaherty, **LOCKRIDGE GRINDAL NAUEN PLLP**, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401-2179, for plaintiff.

Timothy P. Griffin and Frederick W. Morris, **LEONARD STREET AND DEINARD, P.A.**, 150 South Fifth Street, Suite 2300, Minneapolis, MN 55402, for defendants.

On August 13, 2009, plaintiff James Forslund filed a complaint against defendants Stryker Corporation, Stryker Sales Corporation, and Stryker Orthopaedics,[1] alleging various claims arising out of the insertion of a pain pump manufactured by Stryker into Forslund's shoulder after surgery. Forslund claims that the pain pump's continuous injection of anesthetic solutions directly into his shoulder caused permanent damage to

---

[1] On October 16, 2009, the parties stipulated to the dismissal of Stryker Orthopaedics from the case. (Docket No. 25.)

his shoulder joint. Forslund alleges claims for strict liability, negligence, negligent misrepresentation, and breach of express and implied warranties. On September 28, 2009, Stryker filed a motion for judgment on the pleadings. Forslund opposes the motion and, in the alternative, moves for leave to amend his complaint. For the reasons set forth below, the Court grants Stryker's motion, dismissing Forslund's complaint without prejudice in part and with prejudice in part; and grants Forslund's motion for leave to amend.

## BACKGROUND[2]

On or about December 29, 2005, Forslund underwent shoulder surgery. (Compl. ¶ 5, Docket No. 1.) After the operation, a pain pump designed and manufactured by Stryker was implanted in Forslund's shoulder. (*Id.* ¶¶ 5, 12.) The pain pump is a medical device that "deliver[s] a continuous and rate-controlled amount of pain medication, via catheter, directly to a surgical site, including the joint space, for post-surgical pain management." (*Id.* ¶ 7.) Stryker "designed, manufactured, sold, and/or distributed [the pain pumps] with the intent . . . that they be used with a reservoir of anesthetic solution for 48 hours or more." (*Id.* ¶ 9.) According to the complaint, "the continuous injections of anesthetic solutions . . . directly into or in the vicinity of the shoulder joint, can cause and has caused catastrophic and permanent damage to . . . [Forslund's] shoulder joint,

---

[2] For the purposes of the motion to dismiss, the Court accepts the factual allegations contained in the complaint as true. *Bhd. of Maint. of Way Employees v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001) (per curiam); *see also Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009).

resulting in severe and unremitting pain, weakness, loss of strength, decreased range of motion, and other profound injuries." (*Id.*) As a result, Forslund "has been left severely and permanently disabled." (*Id.* ¶ 10.)

Forslund alleges six claims against Stryker for (1) strict liability (design defect and failure to warn), (2) negligence (design defect and failure to warn), (3) negligent misrepresentation, (4) breach of express warranty, (5) breach of implied warranty of merchantability, and (6) breach of implied warranty of fitness for a particular purpose. On September 28, 2009, Stryker filed a motion for judgment on the pleadings. Forslund opposes the motion and alternatively requests leave to file an amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).

## DISCUSSION

### I. STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings." A motion for judgment on the pleadings is analyzed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Westcott v. Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to the non-moving party. *See, e.g.*, *Bhd. of Maint. of Way*, 270 F.3d at 638. To survive a motion for judgment on the pleadings, however, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *See Ashcroft v. Iqbal*, --- U.S. ---, 129 S.

Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, to avoid dismissal, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed. *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

## II. FORSLUND'S ORIGINAL COMPLAINT

### A. **Strict Liability** (Count 1)

Forslund raises two strict liability claims in his complaint, alleging that the pain pump was defectively designed and that the pain pump was defective because Stryker failed to provide adequate warnings and instructions. Stryker argues that Forslund has not pleaded facts sufficient to establish either strict liability claim.

#### 1. **Design Defect**

To recover for strict liability under Minnesota products liability law, "the plaintiff must establish (1) that the defendant's product was in a defective condition unreasonably dangerous for its intended use, (2) that the defect existed when the product left the defendant's control, and (3) that the defect was the proximate cause of the injury sustained." *Bilotta v. Kelly Co., Inc.*, 346 N.W.2d 616, 623 n.3 (Minn. 1984); *Drager v.*

*Aluminum Indus. Corp.*, 495 N.W.2d 879, 882 (Minn. Ct. App. 1993). "Minnesota merges negligence and strict liability claims into a single products liability theory, which employs a reasonable-care balancing test to determine whether a product is defective." *Thompson v. Hirano Tecseed Co., Ltd.*, 456 F.3d 805, 809 (8th Cir. 2006); *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1009 (8th Cir. 1998) ("The reasonable care balancing test is used in Minnesota to determine if a product was designed in a defective condition unreasonably dangerous for its intended use." (internal quotation marks omitted)). To determine whether a product is unreasonably dangerous in its design, the Court balances "the likelihood of harm, and the gravity of harm if it happens, against the burden of the precaution which would be effective to avoid the harm." *Bilotta*, 346 N.W.2d at 621; *accord Trost*, 162 F.3d at 1009. "The test is an objective standard 'which focuses on the conduct of the manufacturer in evaluating whether its choice of design struck an acceptable balance among several competing factors.'" *Trost*, 162 F.3d at 1009 (quoting *Bilotta*, 346 N.W.2d at 622); *see also Young v. Pollock Eng'g Group, Inc.*, 428 F.3d 786, 789 (8th Cir. 2005).

Forslund alleges that "the pain pump was defectively designed and manufactured by the Defendants in that the continuous feed of post-surgical anesthetic solution at the delivery rate used by the pain pump caused permanent injury." (Compl. ¶ 13(a), Docket No. 1.) Forslund also alleges that the pain pump's delivery of anesthetic solutions directly to the shoulder joint caused "catastrophic and permanent damage" to Forslund's shoulder joint, (*id.* ¶ 9); that the Food and Drug Administration ("FDA") denied Stryker's application to permit the use of pain pumps in the shoulder joint space, (*id.* ¶ 13(g)); and

that continuous injection of anesthetics into the shoulder joint by the pain pump "is very likely to cause serious and permanent injury to the joint," (*id.* ¶ 13(d)).

Forslund alleges only conclusory statements that the pain pump is unreasonably dangerous in its design. Reciting the elements of the reasonable-care balancing test, Forslund alleges that the pain pump's continuous injection of anesthetic solutions directly into the shoulder joint "is very likely to cause permanent injury," but Forslund does not allege facts supporting that conclusion. Although Forslund characterizes the potential harm caused by that defect as "catastrophic and permanent," Forslund does not allege facts identifying the burden on Stryker to adopt a precaution that would avoid such harm. Forslund's claim boils down to an allegation that the pain pump is defective and unreasonably dangerous in its design because it is "very likely" to cause serious harm. Consequently, Forslund's complaint does not allege sufficient facts to plead a plausible design defect claim under Minnesota law. *See Iqbal*, 129 S. Ct. at 1949 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks and alteration omitted)).[3]

### 2. Failure to Warn

Forslund alleges that Stryker "marketed, sold, and/or distributed the[] pain pumps specifically to be used directly in the shoulder joint space." (Compl. ¶ 13(g), Docket

---

[3] Forslund has clarified that he did not intend to and does not now assert a claim for defective manufacturing. (Pl.'s Mem. in Opp'n to Defs.' Mot. for J. on Pleadings at 6 n.30, Docket No. 29.)

No. 1.) Forslund alleges that Stryker "failed to provide adequate warnings and instructions concerning the risks presented by (i) using a higher dosage of pain medication, (ii) inserted into the surgical site, and (iii) for an extended period of time." (*Id.* ¶ 13(b).) Forslund also claims that the pain pump's "instructions and labeling failed to include a precaution against placing the catheter of the[] pain pumps in or near the joint space," and that the pain pump's "instructions and labeling failed to provide [Forslund], his surgeon, or the United States medical community at large adequate instructions and warnings for safe use of the[] pain pumps in or near the joint shoulder space." (*Id.* ¶ 13(e)-(f), Docket No. 1.) Forslund alleges that the defective warnings rendered the pain pumps unreasonably dangerous. (*Id.* ¶ 13(h).)

Stryker argues that Forslund's complaint does not establish a failure-to-warn claim because it does not plead facts (1) identifying the use for which the Stryker pain pump was designed and marketed; (2) showing that Forslund's surgeon used the pain pump in the manner for which it was designed and marketed; (3) demonstrating that Stryker knew or should have known that the pain pump was likely to be dangerous for its intended use; or (4) indicating that Stryker failed to use reasonable care in informing Forslund's surgeon that certain uses of the pain pump could be unreasonably dangerous. (Defs.' Mem. in Supp. of Mot. for J. on the Pleadings at 9, Docket No. 18.)

"[A] supplier has a duty to warn end users of a dangerous product if it is reasonably foreseeable that an injury could occur in [the] use [for which it is supplied]."[4] *Gray v. Badger Min'g Corp.*, 676 N.W.2d 268, 274 (Minn. 2004); *see also Gamradt v. Federal Lab., Inc.*, 380 F.3d 416, 419 (8th Cir. 2004) (applying Minnesota law). "The duty to warn has been described as two duties: (1) The duty to give adequate instructions for safe use; and (2) the duty to warn of dangers inherent in improper usage." *Frey v. Montgomery Ward & Co.*, 258 N.W.2d 782, 787 (Minn. 1977). "[W]here the manufacturer . . . of a product has actual or constructive knowledge of danger to users, the . . . manufacturer has a duty to give warning of such dangers." *Id.* at 788. "To be legally adequate, the warning should (1) attract the attention of those that the product could harm; (2) explain the mechanism and mode of injury; and (3) provide instructions on ways to safely use the product to avoid injury." *Gray*, 676 N.W.2d at 274.

With respect to the use or purpose for which the pain pump was designed, Forslund contends that Stryker "designed and marketed pain pumps for use directly in the shoulder joint space." (Pl.'s Mem. in Opp'n to Mot. for J. on the Pleadings at 9, Docket No. 29.) Forslund's complaint, however, alleges only that Stryker designed and manufactured the pain pumps for use in "the joint space." (Compl. ¶ 7, Docket No. 1.) From that language, the Court is required to make a significant assumption that Stryker

---

[4] The Minnesota Supreme Court "has adopted the position that strict liability for failure to warn is based upon principles of negligence." *Germann v. F.L. Smithe Mach. Co.*, 395 N.W.2d 922, 926 n.4 (Minn. 1986).

intended the pain pumps be used in shoulder joint spaces. Given the disjointed, vague allegations in the complaint, the Court declines to draw such an inference.

Forslund also alleges that Stryker failed to take reasonable care to inform Forslund's surgeon of the dangers inherent in the intended use of or misuse of the pain pump, (*see id.* ¶ 20(d)), but Forslund does not allege facts supporting that conclusion. Indeed, Forslund does not allege facts showing that Stryker knew or should have known that the pain pump would be dangerous for the use for which it was supplied.[5] Accordingly, Forslund's complaint does not allege sufficient facts to support a plausible claim for relief for failure to warn.

### 3. Redundant Claims

Stryker also contends that the Court should dismiss Forslund's strict liability claims for design defect and failure to warn for the additional reason that they would be redundant with Forslund's negligence claims. (Defs.' Mem. in Supp of Mot. for J. on the Pleadings at 7, 10, Docket No. 18.) Minnesota law merges strict liability and negligence theories under a single products liability theory and analyzes design defect claims under

---

[5] Forslund alleges that the FDA did not approve the pain pump for use in the shoulder joint space. (*Id.* ¶ 13(g).) That allegation, however, is not probative of whether Stryker knew or should have known of the risks relating to the use of the pain pump in the shoulder joint space and therefore that Stryker had a duty to warn about that potential use.

Forslund also filed a supplemental declaration with his opposition to Stryker's motion, which includes an FDA advisory relating to the use of pain pumps in joint spaces. Because that declaration is not necessarily embraced by the pleadings, the Court declines to consider that exhibit in this motion. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

the reasonable-care balancing test. *See Thompson*, 456 F.3d at 809. Forslund, however, does not need to decide at this stage of the litigation whether he will pursue his strict liability claims or negligence claims. Although Forslund will eventually have to choose only one of those claims to submit to the jury, Forslund "can plead and prove at trial either or both theories," and then determine which theory to submit to the jury. *Hauenstein v. Loctite Corp.*, 347 N.W.2d 272, 275 (Minn. 1984); *cf. Bilotta*, 346 N.W.2d at 622 ("Whether strict liability or negligence affords a plaintiff the broader theory of recovery will depend largely on the scope of evidence admitted by the trial court and on the jury instructions given under each theory.").

For the reasons stated above, the Court dismisses without prejudice Forslund's strict liability design defect and failure to warn claims.

### B. **Negligence** (Count 2)

In addition to his strict liability claims, Forslund brings claims for negligent design and negligent failure to warn. Stryker argues that the Court should dismiss the negligence claims because they are redundant with his strict liability claims. Forslund responds that because his negligence cause of action incorporates the prior allegations – including his strict liability allegations – in the complaint, he has stated a claim for negligence:

> The same facts from which a jury could conclude that [Stryker's] pain pump was defectively designed also support a claim that [Stryker] failed to exercise reasonable care in designing the pain pump, and the same facts from which a jury could conclude that the pain pump was defective because it was not accompanied by adequate warnings and instructions regarding its

use also support a claim that [Stryker was] negligent in not providing proper warnings.

(Pl.'s Mem. in Opp'n to Defs.' Mot. for J. on the Pleadings at 12, Docket No. 29.)

To the extent that Forslund's negligence allegations rely on the preceding allegations of fact and allegations relating to his strict liability claims, the Court similarly concludes that Forslund has not adequately pleaded his negligence claims under the reasonable-care balancing test.[6] *See, e.g.*, *Westbrock v. Marshalltown Mfg. Co.*, 473 N.W.2d 352, 356 (Minn. Ct. App. 1991) ("*Bilotta* merged strict liability[ and] negligence . . . remedies into a single products liability theory. To recover, an injured party must show (1) the product was in a defective condition, unreasonably dangerous to the user, (2) the defect existed when the product left the manufacturer's control, and (3) causation. The [Minnesota] supreme court fused a negligence standard into a traditional strict liability theory by employing a reasonable care balancing test to determine whether the product was defective." (citations omitted)); *see also Germann v. F.L. Smithe Mach. Co.*, 395 N.W.2d 922, 926 n.4 (Minn. 1986). Accordingly, the Court dismisses without prejudice Forslund's negligence claims.

As noted above, however, the negligence claims are not redundant with the strict liability claims at this stage of the litigation, and Forslund may plead both theories in his complaint. *See Hauenstein*, 347 N.W.2d at 275.

---

[6] "The distinction between strict liability and negligence in design-defect and failure-to-warn cases is that in strict liability, knowledge of the condition of the product and the risks involved in that condition will be imputed to the manufacturer, whereas in negligence these elements must be proven." *Bilotta*, 346 N.W.2d at 622.

### C. Negligent Misrepresentation (Count 3)

Forslund alleges that Stryker negligently misrepresented and communicated false information to Forslund and his surgeon that the "pain pumps were safe, effective, and would not harm or adversely affect . . . Forslund's health." (Compl. ¶ 26, Docket No. 1.) Forslund further alleges that Stryker knew those representations to be false, that he and his surgeon reasonably relied on those representations, and that the misrepresentations proximately caused him damages. (*Id.* ¶¶ 26-29.)

Stryker asks the Court to dismiss Forslund's negligent misrepresentation claim for two reasons: First, Stryker contends that Forslund has not pled his negligent misrepresentation claim with particularity as required under Federal Rule of Civil Procedure 9(b). Second, Stryker argues Forslund may not recover under a negligent misrepresentation theory because Minnesota law only permits a party to recover pecuniary damages for negligent misrepresentation and, here, Forslund alleges personal injury.

#### 1. Federal Rule of Civil Procedure 9(b)

To establish a claim for negligent misrepresentation, Forslund must demonstrate that "(1) [Stryker] owe[d] him a duty of care in obtaining or communicating information; (2) [Stryker] supplied false information in breach of that duty of care; (3) [Forslund] justifiably relied on the false information; and (4) [Forslund] was damaged as a result." *See Masepohl v. Am. Tobacco Co., Inc.*, 974 F. Supp. 1245, 1251 (D. Minn. 1997).

Forslund must plead his claim for negligent misrepresentation with particularity as required under Federal Rule of Civil Procedure 9(b). *McGregor v. Uponor, Inc.*, Civ. No. 09-1136, 2010 WL 55985, at *3 (D. Minn. Jan. 4, 2010) ("Minnesota law holds that allegations of . . . negligent misrepresentation[] sound in fraud and therefore must satisfy the pleading requirements of Rule 9(b)."); *ADT Sec. Servs., Inc. v. Swenson*, No. Civ. 07-2983, 2008 WL 2828867, at *4 (D. Minn. July 21, 2008); *see also McLain v. Andersen Corp.*, 567 F.3d 956, 970 (8th Cir. 2009). A claim for negligent misrepresentation must generally plead circumstances "includ[ing] such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1069 (8th Cir. 1995).

Forslund's allegations do not identify who made the representations to Forslund or his surgeon, the content of those representations, or when the representations were made. As a consequence, the complaint does not allege facts by which to determine that the representations were false at the time they were made. Accordingly, Stryker is entitled to judgment on the pleadings on Forslund's negligent misrepresentation claim because Forslund has not pleaded that claim with particularity.

### 2. Pecuniary Damages

Stryker also argues that Forslund's negligent misrepresentation claim should be dismissed because it does not arise out of a business or commercial setting and seek damages for pecuniary loss. The Minnesota Supreme Court has held:

> One who, in the course of his business, profession or employment, or in a transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Bonhiver v. Graff*, 248 N.W.2d 291, 298 (Minn. 1976).

Forslund contends that although the Minnesota Supreme Court has not permitted claims for negligent misrepresentation involving the risk of physical harm, the Supreme Court has also not "foreclose[d] the possibility of recognizing in Minnesota the tort of negligent misrepresentation involving the risk of physical harm." *Smith v. Bruger Cos.*, 569 N.W.2d 408, 411 (Minn. 1997). Alternatively, Forslund argues that he has pleaded that Stryker's alleged statements were made in a business or commercial setting or in a setting in which Stryker had a pecuniary interest, and that Forslund suffered pecuniary loss in the form of extensive medical bills and follow-up care by relying on those representations. (Pl.'s Mem. in Opp'n to Mot. for J. on Pleadings at 15, Docket No. 29.)

Putting aside Forslund's inability to plead the negligent misrepresentation claim with particularity, Forslund has not stated a claim for negligent misrepresentation as a matter of law. Forslund offers no support for the argument that while the Minnesota Supreme Court has not foreclosed the possibility of recognizing a negligent misrepresentation claim for physical harm, Minnesota law would permit such a claim here. Moreover, in the Court's view, if medical bills constituted pecuniary loss in these circumstances, the Minnesota Supreme Court would have recognized negligent-misrepresentation claims involving allegations of physical harm. The court has not done

so, however, and has instead limited the scope of a negligent misrepresentation claim to a commercial or business setting with consequent pecuniary loss. *See Bonhiver*, 248 N.W.2d at 298. Because Forslund's injuries do not arise out of a business or commercial setting in which he had suffered pecuniary harm, the Court dismisses with prejudice Forslund's negligent misrepresentation claim.

### D. **Breach of Express Warranty** (Count 4)

In his fourth cause of action for breach of express warranty, Forslund alleges "[o]n information and belief, [Stryker] . . . expressly communicated to . . . Forslund's surgeon that the pain pump was appropriate for use in or near the shoulder joint, and . . . Forslund's surgeon reasonably relied on that statement in choosing to use [Stryker's] pain pump in or near . . . Forslund's shoulder joint." (Compl. ¶ 31, Docket No. 1.) Stryker argues that the Court should dismiss Forslund's breach of express warranty claim because the complaint does not allege a plausible claim for relief under that theory.

Under Minnesota law, an express warranty is "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Minn. Stat. § 336.2-313(1)(a). "It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that the seller have a specific intention to make a warranty[.]" *Id.* § 336.2-313(2).

Although Forslund may plead his claims on information and belief, Forslund's allegations lack any factual support. The complaint does not identify who made

affirmations or promises about the pain pump, to whom those statements were made, or the general terms of those statements. Although standard notice pleading practice may not require Forslund to plead all such facts, *see* Fed. R. Civ. P. 8, Forslund's allegations are so deficient as to render the breach of express warranty claim implausible on its face. Accordingly, the Court dismisses that claim without prejudice.

### E. Breach of Implied Warranty of Merchantability (Count 5)

Forslund alleges that Stryker's pain pumps, at the time they were placed in the stream of commerce "were not fit for the ordinary purposes for which such products are intended and were unmerchantable to users and consumers, including Plaintiff James Forslund." (Compl. ¶ 36, Docket No. 1.)

Stryker contends that in a personal injury case, where a defect is alleged to render a product unfit for its ordinary purpose under implied warranty, the claim sounds in tort and is merged under the strict liability doctrine. *See Masepohl*, 974 F. Supp. at 1253. As a result, Stryker argues that Forslund's claim for breach of implied warranty of merchantability is redundant. (Defs.' Mem. in Supp. of Mot. for J. on Pleadings at 15, Docket No. 18.)

Under Minnesota Statute § 336.2-314, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Minn. Stat. § 336.2-314. The implied warranty of merchantability assures that a product is "fit for the ordinary purposes for which such goods are used." *Id.* § 336.2.314(2)(c); *Peterson v. Bendix Home Sys., Inc.*, 318 N.W.2d

50, 53 (Minn. 1982). "To prevail on an implied warranty claim, a plaintiff must prove (1) the existence of a warranty; (2) a breach; and (3) a causal link between the breach and the alleged harm." *Masepohl*, 974 F. Supp. at 1253.

Forslund's claim for breach of implied warranty of merchantability fails as a matter of law. "Strict products liability has effectively preempted implied warranty claims where personal injury is involved." *Id.* (internal quotation marks and alteration omitted); *see also Nimeth v. Prest Equip. Co.*, No. C1-93-685, 1993 WL 328767, at *1 (Minn. Ct. App. Aug. 31, 1993) (citing *Continental Ins. Co. v. Loctite Corp.*, 352 N.W.2d 460, 462 (Minn. Ct. App. 1984)); *Goblirsch v. Western Land Roller Co.*, 246 N.W.2d 687, 690 (Minn. 1976)). Because Forslund's complaint alleges strict products liability claims and personal injury, Forslund's claim for breach of implied warranty of merchantability is preempted. Accordingly, the Court dismisses with prejudice Forslund's breach of implied warranty of merchantability claim.

### F. Breach of Implied Warranty of Fitness for a Particular Purpose (Count 6)

Forslund alleges that the Stryker pain pump, at the time it was placed in the stream of commerce, "was not fit for the particular purpose for which it was used by . . . Forslund and his surgeon." (Compl. ¶ 39, Docket No. 1.)

Stryker argues the Court should dismiss the claim for breach of implied warranty of fitness for a particular purpose because Stryker did not deal directly with Forslund, Stryker had no knowledge of Forslund's particular needs, and the complaint does not allege facts that Forslund relied on Stryker's expertise in electing to have the pain pump

implanted in his shoulder. (Defs.' Mem. in Supp. of Mot. for J. on Pleadings at 17, Docket No. 18.) Stryker refers to this failure as a lack of "vertical privity." Stryker also contends that the complaint does not identify Forslund's "particular purpose."

Under Minnesota Statute § 336.2-315, "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified . . . an implied warranty that the goods shall be fit for such purpose." Minn. Stat. § 336.2-315. To establish a claim for breach of an implied warranty of fitness for a particular use, Forslund must establish that: "(1) the seller had reason to know of the buyer's particular purpose; (2) the seller had reason to know that the buyer was relying on the seller's skill or judgment to furnish appropriate goods; and (3) the buyer's actual reliance." *Driscoll v. Standard Hardware, Inc.*, --- N.W.2d ---, 2010 WL 2813532, at *10 (Minn. Ct. App. July 20, 2010).

As an initial matter, Forslund's failure to plead vertical privity is not dispositive, because as a surgical patient, it is reasonable to expect that Forslund would use or be affected by the Stryker pain pump. *See* Minn. Stat. § 336.2-318 ("A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty.").

Forslund's allegations, however, merely recite the elements of the claim. Forslund does not allege any facts identifying the "particular purpose" for which the pain pump was supplied or indicating that Forslund or his surgeon relied on Stryker's skill or judgments in electing to use the pain pump. Thus, the claim is not plausible on its face.

*See Iqbal*, 129 S. Ct. at 1949-50 (internal quotation marks omitted).  Accordingly, the Court dismisses without prejudice Forslund's claim for breach of implied warranty of fitness for particular purpose.

### III. FORSLUND'S REQUEST FOR LEAVE TO AMEND UNDER RULE 15(a)(2)

Forslund filed a conditional motion for leave to amend the complaint.  (*See* Docket No. 30.)  Under Federal Rule of Civil Procedure 15(a)(2), leave to amend "shall be freely given where justice so requires."  "A district court may appropriately deny leave to amend where there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment."  *Moses.com Secs., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (internal quotation marks omitted).

Stryker argues that the Court should deny Forslund's request for leave to amend, asserting that the proposed First Amended Complaint, (*see* Ex. 1, Docket No. 30), does not address the shortcomings of the original complaint.  Stryker, however, does not argue that Forslund has unduly delayed these proceedings, acted in bad faith, or repeatedly failed to cure deficiencies in his complaint.  Further, the Court's guidance in this Order provides Forslund with a better understanding of deficiencies in the original complaint, and Forslund may file an amended complaint addressing those deficiencies within thirty days of this Order.

To summarize: the Court dismisses with prejudice Forslund's third and fifth causes of action for negligent misrepresentation and breach of implied warranty of merchantability as not supported by the facts pleaded or the applicable law. The Court dismisses without prejudice the remaining claims, and grants Forslund leave to amend the complaint consistent with the Court's reasoning in this Order.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Stryker's Motion for Judgment on the Pleadings [Docket No. 16] is **GRANTED** as follows:

    a. Count 3 for negligent misrepresentation and Count 5 for breach of implied warranty of merchantability are **DISMISSED with prejudice**.

    b. Count 1 for strict liability, Count 2 for negligence, Count 4 for breach of express warranty, and Count 6 for breach of implied warranty of fitness for a particular purpose are **DISMISSED without prejudice**.

2. Forslund's Conditional Motion for Leave to Amend the Pleadings [Docket No. 30] is **GRANTED**. Forslund may file an amended complaint within thirty (30) days of the filing of this Order.

DATED: September 30, 2010  
at Minneapolis, Minnesota.

                                                                       s/ John R. Tunheim  
                                                                        JOHN R. TUNHEIM  
                                                                      United States District Judge